# Court of Appeals
## Tenth Appellate District of Texas

10-24-00282-CV

Cheyenne Partners, LLC and Jason Alan Kitts,
Appellants

v.

Rainbow International, LLC and The Grounds Guys, LLC,
Appellees

On appeal from the
170th District Court of McLennan County, Texas
Judge Jim Meyer, presiding
Trial Court Cause No. 2017-2979-4

JUSTICE SMITH delivered the opinion of the Court.

**MEMORANDUM OPINION ON REHEARING**

On March 5, 2026, this Court issued a memorandum opinion and judgment in this case. *See Cheyenne Partners, LLC v. Rainbow Internat'l, LLC*, No. 10-24-00282-CV, 2026 WL 621055 (Tex. App.—Waco March 5, 2026, no pet. h.) (mem. op.). In that opinion, we determined that Appellants' issues three and four were waived. Appellants filed a motion for rehearing complaining of our disposition of those two issues. After reviewing the motion for rehearing

and response thereto, we grant the motion for rehearing solely with respect to Appellants' request for this Court to review their issues three and four on the merits. We deny Appellants' motion for rehearing in all other respects. Accordingly, we withdraw this Court's opinion and judgment dated March 5, 2026 and substitute this opinion and its associated judgment in their place.

Cheyenne Partners, LLC and Jason Alan Kitts appeal from the trial court's judgment rendered in favor of Rainbow International, LLC and The Grounds Guys, LLC's suit involving a Michigan Franchise Agreement. In four issues, Appellants contend Michigan law applies to this dispute, the evidence is insufficient to support the finding of breach of contract, Appellants established defenses precluding judgment, and Appellants established their counterclaims. We affirm.

## BACKGROUND

Jason Kitts acquired a Rainbow franchise in Monroe, Michigan in 2009 and a second franchise in Oakland, Michigan in 2014. In late 2014, he acquired a Grounds Guys franchise. Kitts assigned the franchises to his company, Cheyenne Partners, but Kitts is the personal guarantor. While Appellants' franchises were financially successful, Kitts had a contentious relationship with Rainbow. On September 5, 2017, following months of unproductive communications between Kitts and Rainbow, Appellees filed their original

petition in the 170th District Court in Waco. Rainbow sent a "Notice of Default and Intent to Terminate Franchise Agreements," dated September 8, 2017, specifying defaults and giving Appellants thirty days to remedy the defaults. Thereafter, Rainbow sent a "Notice of Final Termination of Franchise Agreement" to Appellants dated November 16, 2017.

In April 2018, Appellants filed a "Notice of Removal" in the United States District Court for the Western District of Texas, Waco Division. In December 2018, that court remanded the case back to the 170th District Court. A trial before the court was eventually held in June 2024. The trial court found that Appellants breached their contract with Rainbow and abandoned their Grounds Guys franchise and awarded damages to Appellees.

## CHOICE OF LAW

In their first issue, Appellants contend that the trial court erred in failing to apply Michigan law, which provides protections to the franchise relationship. Without specifying which defenses and issues, they assert that Michigan's franchise protections should apply to specific defenses and issues arising under its statutory scheme.

Under Rule of Evidence 202, a party may compel a trial court to take judicial notice of another state's law by filing a motion, giving notice to other parties, and furnishing the court with sufficient information to enable it to

properly comply with the request. TEX. R. EVID. 202; *Daugherty v. S. Pac. Transp. Co.*, 772 S.W.2d 81, 83 (Tex. 1989). To have foreign law applied to a case, a party must file a preliminary motion requesting application of foreign law in addition to the request to take judicial notice. *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 769 (Tex. App.—Corpus Christi-Edinburg 1999, pet. denied). Choice of law issues can be waived if not properly invoked. *Kubbernus v. ECAL Partners, Ltd.*, 574 S.W.3d 444, 473 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). Further, to preserve an issue for appellate review, a party must make its complaint known to the trial court by a timely request or objection that is specific enough for the trial court to be aware of the complaint and then receive a ruling from the trial court. TEX. R. APP. P. 33.1.

Appellants assert that they adequately apprised the court of a choice of law dispute by raising the issue and providing the court sufficient information to conduct a choice of law analysis. They cited to several documents in the record arguing that in those documents they asserted that Michigan law applies, asked the court to apply it, provided the court with specific statutes on which they relied, and pointed out the differing standards under each state's laws.

The documents Appellants cited are: Defendant's Original Answer and Counterclaims filed in the United States District Court for the Western

District of Texas, Waco Division; Defendant's Supplemental Response to Plaintiffs' Opposed Motion to Remand filed in the United States District Court for the Western District of Texas, Waco Division; Defendant's Response to Plaintiffs' No-Evidence Motion for Summary Judgment; Defendants' Objections to Plaintiffs' Motion for Entry of Judgment and Proposed Judgment; and Defendants' Motion for New Trial.

Two of the documents Appellants rely on were filed in federal court and there is nothing in the record indicating those documents were seen by the judge of the 170th District Court. Of the documents filed in the 170th District Court, one was filed after the trial and one was filed after the trial court rendered judgment, therefore both were untimely for purposes of raising a choice of law issue. *See DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 196-97 (Tex. App.—Fort Worth 2012, no pet.); *Colvin v. Colvin*, 291 S.W.3d 508, 514 (Tex. App.—Tyler 2009, no pet.) (motion to apply Louisiana law filed after jury was seated and with a trial set to begin within the hour was untimely); *Walters*, 1 S.W.3d at 769-70 (motions to apply Virginia law filed on eve of trial were untimely). The final document Appellants rely on is their response to Appellees' No-Evidence Motion for Summary Judgment. In their response, Appellants asserted Texas law, with one exception. While they cited to Section 445.1527 of the Michigan Franchise Investment Law,

asserting they have sufficient evidence of violations of that law, they did not raise the issue of choice of laws or address differences between Michigan and Texas law.

It is undisputed that Appellants did not file a Rule 202 motion requesting the court take judicial notice of Michigan law. Although Michigan franchise law was mentioned at trial, that is insufficient to constitute a request to take judicial notice or to raise a choice of law issue. Furthermore, while cross examining a witness, Appellants' counsel asked a question referencing a Michigan law that voids any provision in a franchise agreement requiring arbitration or litigation to be conducted outside Michigan. Appellees' counsel objected, telling the court that Appellants did not follow the process of informing the court of Michigan law. Appellants' counsel did not correct him. We conclude that nothing in the record shows that Appellants asked the court to apply Michigan law. Accordingly, Appellants' contention that Michigan law applies has been waived. *See Kubbernus*, 574 S.W.3d at 473. We overrule Appellants' first issue.

## BREACH OF CONTRACT

In part A of their second issue, Appellants argue that "many of the alleged breaches, resulting in termination and damages, are legally invalid as no notice or opportunity to cure were given." Noting that the trial court did

not specify which contractual term was breached, or "articulate *which* theory the judgment rested [on]—including legally invalid ones for which no notice or opportunity to cure were provided," Appellants argue that "the judgment co-mingles and rests on legally invalid theories of recovery," requiring reversal and remand of the case for a new trial.

Apparently, Appellants' argument that some theories presented to the trial court are legally invalid rests on the application of Michigan law. As explained above, Appellants never asked the trial court to apply Michigan law. Even assuming Appellants' characterization of some theories as constituting legally invalid theories is accurate, the theories based on Michigan law were never presented to the trial court.

Appellants label their complaint in this issue a *Casteel* problem. *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 387-89 (Tex. 2000) (op. on reh'g) (held that a jury charge is erroneous when a jury answers a single broad-form liability question affirmatively, the single liability question incorporates multiple legal theories, and at least one of those legal theories does not support liability as a matter of law and therefore is invalid). Appellants argue that co-mingling of legally invalid theories of recovery makes it impossible for Appellants or a reviewing court to discern whether the findings and judgment are predicated on a legally valid theory.

The parties' Franchise Agreement required notice and an opportunity to cure some of the alleged breaches but not all of the alleged breaches. Also, Appellants were given the opportunity to cure some alleged breaches. Appellants do not explain how those theories of breach requiring notice and an opportunity to cure fail to support liability as a matter of law as opposed to merely failing to support liability because they lack evidentiary support. The Texas Supreme Court has clarified that whether the *Casteel* presumption of harm applies, because a broad-form charge commingled legally valid theories or allegations with legally invalid theories or allegations, or does not apply, because the charge commingled valid theories or allegations with theories or allegations that were invalid only because the evidence did not support them, the question on review is whether the charge probably caused an improper judgment or probably prevents the appellant from properly presenting the case on appeal. *Horton v. Kansas City S. Ry. Co.*, 692 S.W.3d 112, 145-46 (Tex. 2024). This was a nonjury trial. For purposes of our discussion, we assume the same reasoning applies in a trial before the court. *See Zaidi v. Shah*, 502 S.W.3d 434, 440 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

Here, as explained below, there is sufficient evidentiary support for some of the theories on which Appellees relied and presented to the trier of fact. Therefore, even assuming the theories requiring notice and an opportunity to

cure can be labeled as invalid, comingling of those theories with other theories not requiring notice and an opportunity to cure did not cause an improper judgment or prevent Appellants from properly presenting their case on appeal. *See Horton*, 692 S.W.3d at 145-46.

In part B of their second issue, mentioning only the four alleged defaults named in Rainbow's November 16, 2017 termination letter, Appellants assert the evidence is legally and factually insufficient to support a finding of breach of contract.[1] They argue that "[t]he question is *what evidence* if any, supports the conclusion that Rainbow notified Kitts of defaults which he then failed to cure." Regarding the allegation of failure to make note payments, Appellants assert that the testimony presented by Appellees was a guess, not based on personal knowledge. Regarding the alleged lack of tax documents, and considering testimony that Kitts did not submit the precise letters from his accountant that Rainbow wanted, Appellants contend they were in substantial compliance with the contractual requirements.

---

[1] In its findings of fact, the trial court found that Appellants breached the terms of the agreements with both Rainbow and Grounds Guys. However, Appellants never mention Grounds Guys in their argument in support of their second issue. Therefore, we construe the complaint to be directed solely at the breach of contract finding regarding the contract with Rainbow. However, to the extent Appellants may be asserting the evidence is insufficient to support the breach of contract finding regarding their contract with Grounds Guys, that complaint has no merit. Mary Thompson and Josh Sevick, employees of the parent company, testified that Appellants abandoned their Grounds Guys contract. Pursuant to Section 11.1.4 of the Franchise Agreement, the franchisor may terminate the franchise without notice if the franchisee abandons the franchised business.

**Standard of Review**

In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence used to support them just as we would review a jury's findings. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000). We review the trial court's conclusions of law de novo; that is, we review the trial court's legal conclusions drawn from the facts to determine their correctness. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

A party who challenges the legal sufficiency of the evidence to support an issue upon which it did not have the burden of proof at trial must demonstrate on appeal that there is no evidence to support the adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id.* We credit favorable evidence if a reasonable finder of fact could, and disregard contrary evidence unless a reasonable finder of fact could not. *Id.* If there is any evidence of probative force to support the finding, i.e. more than a scintilla, we will overrule the issue. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005) (per curiam).

If a party is attacking the factual sufficiency of the evidence to support an adverse finding on an issue on which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *Capps v. Nexion Health at Southwood, Inc.*, 349 S.W.3d 849, 855 (Tex. App.—Tyler 2011, no pet.). The verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). In reviewing the factual sufficiency of the evidence, we must examine the entire record, considering both the evidence in favor of, and contrary to, the challenged findings. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998); *Cain*, 709 S.W.2d at 176. The reviewing court may not substitute its opinion for that of the trier of fact, as it is the factfinder's role to judge the credibility of witnesses, to assign the weight afforded their testimony, and to resolve inconsistencies within or conflicts among the witnesses' testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Ford v. Panhandle & Santa Fe Ry. Co.*, 252 S.W.2d 561, 563 (Tex. 1952).

**Applicable Law**

The essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff;

(3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 837 (Tex. App.—Dallas 2014, no pet.). The last element encompasses a causation requirement. *Velvet Snout, LLC v. Sharp*, 441 S.W.3d 448, 451 (Tex. App.—El Paso 2014, no pet.).

**Discussion**

In arguing the evidence is insufficient to support the breach of contract finding, Appellants mention the four alleged defaults named in the November 16, 2017 letter: failure to make note payments, submit royalty reports, provide tax returns, and maintain insurance. The failure to make note payments and maintain insurance were not alleged as grounds for breach of contract in Appellees' petition. Therefore, it was not necessary to present evidence of those two failures.

Reports

Pursuant to Sections 3.6 and 5.7.1 of the Franchise Agreement, sales reports and license fee payments were required to be made weekly. Mary Thompson, Chief Operating Officer of Rainbow's parent company at the time, testified that between May 2016 and December 2016, Kitts did not submit reports. In 2017, there were twenty-three times he did not submit reports on time. He stopped reporting in March 2017. As of the date of termination, he

owed eighteen reports for 2017 for his Monroe territory and thirty-five weeks of reports for his Oakland territory. When Kitts failed to send in reports, he also failed to send in required license fees. In July 2017, Rainbow sent email notifications to Kitts identifying missing reports. Pursuant to Sections 11.1 and 11.1.11 of the Franchise Agreement, the franchisor may terminate the agreement without providing the franchisee with notice and the opportunity to cure when he fails to comply with reporting requirements. Section 11.2.1 requires the franchisor to provide notice and an opportunity to cure for failure to promptly pay any monies owing to the franchisor. The September 8, 2017 notice of default and intent to terminate named the failure to make payments due in breach of Section 3 of the Franchise Agreement as a basis for default.

Financial Statements

Section 5.7.3 of the Franchise Agreement requires the franchisee to timely submit an income and expense statement and a balance sheet, and upon demand by the franchisor, financial statements audited by an independent certified public accountant. Thompson testified that Kitts failed to provide the audited financial statements. Pursuant to Section 11.1.10 of the Franchise Agreement, the franchisor may terminate the agreement without providing the franchisee with notice and the opportunity to cure when he fails to provide the required audited financial statements.

Goodwill

Liberty Mutual Insurance Company had an agreement with Rainbow whereby Rainbow franchisees would provide services for Liberty Mutual insureds. Participation by franchisees is optional but if they opt in, they must comply with the insurance company's requirements. Appellants participated in the program but failed to comply with Liberty Mutual's requirements. Therefore, Liberty Mutual suspended Kitts and Rainbow. Thompson testified that the suspension caused Rainbow to lose a substantial amount of business and damaged Rainbow's goodwill. Sections 11.1 and 11.1.8 of the Franchise Agreement provide that the franchisor need not provide the franchisee with notice and the opportunity to cure if the franchisee materially impairs Rainbow's goodwill.

Appellants' Evidence

Kitts was asked by Appellees' counsel why he did not timely submit the weekly sales analysis reports. He responded with, "I don't recall exactly why each event. There was probably different reasons for each time." Kitts testified that, although the reports were delayed, he turned in the missing reports along with checks for money due. He also provided tax returns. He testified that after he received the notice of default, he cured everything.

<u>Conclusion</u>

There is more than a scintilla of evidence to show that Appellants breached the Franchise Agreement by failing to submit reports timely, failing to pay all fees due, failing to provide audited financial statements, and by impairing Rainbow's goodwill. *See Hernandez,* 164 S.W.3d at 388. Although Kitts presented some evidence that he attempted to cure the alleged defaults, he fails to acknowledge that the Franchise Agreement allows termination without notice and the opportunity to cure when the franchisee has failed to timely submit reports or audited financial statements, or if the franchisee materially impairs Rainbow's goodwill. Even considering Kitts' attempts to cure, the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain,* 709 S.W.3d at 176. We overrule Appellants' second issue.

**AFFIRMATIVE DEFENSES**

In their third issue, Appellants assert that the evidence established their affirmative defenses of "fraud (including by non-disclosure)," "breach of Michigan law and the Franchise Agreement" by "obtaining an invalid release," and "prior material breach" by Appellees. They contend reversal and rendition of judgment is proper.

**Standard of Review**

An affirmative defense is by nature one of confession and avoidance and does not seek to defend by merely denying the plaintiff's claims but rather seeks to establish an independent reason why the plaintiff should not recover. *Dixie Carpet Installations, Inc. v. Residences at Riverdale, LP*, 599 S.W.3d 618, 631 (Tex. App.—Dallas 2020, no pet.). The party asserting an affirmative defense bears the burden of pleading and proving its elements. *Compass Bank v. MFP Fin. Servs., Inc.*, 152 S.W.3d 844, 851 (Tex. App.—Dallas 2005, pet. denied).

A party attacking the legal sufficiency of the evidence supporting an adverse finding on an issue on which the party bore the burden of proof must demonstrate all vital facts in support of the issue were established as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). The analysis requires that we first examine the record in the light most favorable to the verdict for some evidence supporting the finding, crediting evidence favoring the finding if a reasonable fact finder could and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 822 (Tex. 2005). We must indulge every reasonable inference that would support the verdict. *Id.* at 822. Some evidence, meaning more than a scintilla, exists when the evidence supporting

the finding "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

If, however, no evidence appears to support the finding, we then examine the entire record to determine whether the contrary proposition is established as a matter of law; the issue will be sustained only if the contrary proposition is conclusively established. *PlainsCapital Bank v. Martin*, 459 S.W.3d 550, 557 (Tex. 2015); *Francis*, 46 S.W.3d at 241. A proposition is established as a matter of law when a reasonable fact finder could draw only one conclusion from the evidence presented. *See City of Keller*, 168 S.W.3d at 814-16.

**Discussion**

Fraud

Regarding the fraud claim, Appellants assert that Appellees secretly sued Appellants without any notice required by contract, concealed it, had him sign a release, and then terminated him. Specifically, they complain that Appellees filed a lawsuit against them on September 5, 2017, but "concealed" it from Kitts until after he signed a release of all claims Kitts might have against Appellees. They contend that the mandatory dispute resolution provision in the Franchise Agreement created a duty to provide them with written notice of the dispute. Asserting that Kitts relied on the fraud by non-

disclosure to his detriment, Appellants contend that they waived key legal rights they would not have waived but for the absence of knowledge of the pending lawsuit. They assert they had to litigate a "fraudulent release" for years.

Fraud by non-disclosure, a sub-category of fraud, occurs when a party has a duty to disclose certain information and fails to disclose it. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219 (Tex. 2019). To establish fraud by non-disclosure, Appellants must show: (1) Appellees deliberately failed to disclose material facts; (2) Appellees had a duty to disclose such facts to Appellants; (3) Appellants were ignorant of the facts and did not have an equal opportunity to discover them; (4) Appellees intended Appellants to act or refrain from acting based on the nondisclosure; and (5) Appellants relied on the non-disclosure, which resulted in injury. *Id.* at 219-20.

Regarding the duty to disclose element, Appellants argue that the Franchise Agreement requires Appellees to give them written notice of any dispute. Section 13 of the Franchise Agreement, entitled "Dispute Resolution," provides that if a dispute arises, the initiating party shall give written notice to the other party, describing the nature of the dispute. However, Section 13.7 of the Franchise Agreement provides for an exception to that requirement

"should a situation arise relating to Franchisee's use of the Marks, the System or Franchisor's Confidential Information or trade secrets" and the Franchisor believes it will suffer irreparable loss or damage if it does not take immediate action. In that situation, the Franchise Agreement allows the Franchisor to seek restraining orders, preliminary injunctive relief and other interim relief without complying with the provisions of Section 13. Appellees filed suit seeking injunctive relief because, they alleged, Appellants violated a covenant not to compete and misappropriated trade secrets. Therefore, due to application of Section 13.7, Appellants did not establish as a matter of law that Appellees had a duty under the Franchise Agreement to provide notice to Appellants before filing the suit. *See Francis*, 46 S.W.3d at 241.

Additionally, Appellants assert they met the harm element because they waived key legal rights when they signed the release. The release was one paragraph contained within an amendment to the Franchise Agreement which Kitts voluntarily signed in order to participate in the Preferred Lead Program.[2] Appellants cite to Kitts' testimony that he would not have signed the amendment containing the release if he had known about the lawsuit. But the mere act of waiving one's rights does not constitute harm. *See LaLonde v. Gosnell*, 593 S.W.3d 212, 218-19 (Tex. 2019) (held that waiver is the intentional

---

[2] The Preferred Lead Program permits a franchisee to perform services in a defined area outside of its territory under certain circumstances.

relinquishment of a known right or intentional conduct inconsistent with claiming that right). We conclude that Appellants have not identified record evidence of the element of harm or injury.

Because they failed to prove Appellees had a duty to disclose the fact they filed a lawsuit and Appellants did not show that the alleged non-disclosure resulted in injury, Appellants did not prove entitlement to the defense of fraud by non-disclosure as a matter of law. *See Bombardier Aerospace Corp.*, 572 S.W.3d at 219-20; *Francis*, 46 S.W.3d at 241.

Breach of Michigan Law and the Franchise Agreement

Appellants assert that Michigan law prohibits blanket waivers purporting to release franchisees' rights. Appellants contend that having Kitts sign the release in the amendment to the Franchise Agreement violated Michigan law and "violated the parties' agreement that specifically noted that it was subject to the protections of the Michigan Franchise Investment Act." Thus, they argue that obtaining the release constituted a prior breach of the Franchise Agreement by Appellees.

As argued by Appellants, the Michigan Franchise Investment Law provides that a requirement that a franchisee agree to a release which deprives it of rights and protections provided by Michigan law is void. MICH. COMP. LAWS SERV. § 445.1527(b). However, as explained above, Appellants did not

properly request the trial court apply Michigan law. *See* TEX. R. EVID. 202. Furthermore, the document Appellants cite as noting the application of Michigan law is a federally mandated franchise disclosure document. *See* 16 C.F.R. §436.2. That document is not part of the parties' Franchise Agreement and cannot create contractual obligations between Appellants and Appellees. Appellants cannot claim as an affirmative defense that a provision in the amendment is void based on a violation of a law they have not appropriately invoked or on the fiction that inclusion of the release in the amendment constitutes a prior material breach of the Franchise Agreement by Appellees. Appellants did not demonstrate as a matter of law all vital facts in support of their affirmative defense of breach of Michigan law and the Franchise Agreement. *See Francis*, 46 S.W.3d at 241.

Prior Material Breach

Appellants assert that Appellees' prior material breach of the Franchise Agreement should have precluded the breach of contract judgment in Appellees' favor. When one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance. *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994).

*Failure to notify Kitts of the lawsuit and requiring Kitts to sign the release*

Appellants assert that Appellees' failure to notify Kitts of the lawsuit, filed on September 5, 2017, breached the Franchise Agreement. As explained above, pursuant to Section 13.7 of the Franchise Agreement, Appellees were not required to notify Appellants before filing this suit.

Additionally, Appellants contend that Appellees required Kitts to sign a "fraudulent release" on September 6, 2017 and assert this was a prior breach of the agreement. As explained above, the reference to Michigan law in the federally mandated disclosure document does not add terms to the parties' Franchise Agreement. Inclusion of the release in the amendment did not constitute a breach of the Franchise Agreement.

Furthermore, as explained above, the evidence shows that Appellants breached the Franchise Agreement in 2016 and 2017 when they impaired Rainbow's goodwill and failed to submit reports timely, provide audited statements, and pay all fees due. Therefore, even assuming failure to notify Appellants of the lawsuit and obtaining Kitts' signature on a document containing a release are breaches of the Franchise Agreement, the acts constituting Appellants' breaches of the agreement occurred before the amendment was signed and the lawsuit was filed. Neither the failure to provide notice nor obtaining Kitts' signature on a release can retroactively

excuse Appellants' breaches. *See Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 437 (Tex. 2017) (per curiam) (held that a material breach excuses future performance, not past performance).

### *Terminating the agreement absent notice and opportunity to cure*

Appellants contend that Appellees terminated the Franchise Agreement without providing them with notice and the opportunity to cure the alleged defaults and that action constitutes a prior material breach precluding the breach of contract judgment in favor of Appellees. As explained above, Appellees terminated the Franchise Agreement because Appellants failed to timely send in required reports and payments due, failed to provide required financial statements, and impaired Rainbow's goodwill. Of those contractual requirements, only the failure to make payments when due required notice and the opportunity to cure. Appellants received notice and the opportunity to cure their failure to make timely payments when Appellees sent the September 8, 2017 notice of default. Appellees terminated the Franchise Agreement on November 16, 2017. Therefore, Appellees did not terminate the agreement without first providing Appellants with notice and the opportunity to cure as required by the Franchise Agreement. Appellants did not demonstrate as a matter of law all vital facts in support of their affirmative defense of prior material breach. *See Francis*, 46 S.W.3d at 241.

Conclusion

The evidence is insufficient to establish Appellants' affirmative defenses of fraud, breach of Michigan law and the Franchise Agreement, and prior material breach. We overrule Appellants' third issue.

APPELLANTS' COUNTERCLAIMS

In their fourth issue, Appellants contend the trial court erred in rendering a take nothing judgment against them on their counterclaims. They assert that the evidence conclusively established their counterclaims for fraud, breach of contract, and violations of the Texas Deceptive Trade Practices Act warranting reversal of the trial court's judgment.

## Standard of Review

When a party challenges the legal sufficiency of an adverse finding on an issue on which it bore the burden of proof at trial, such as a finding against a defendant on a counterclaim, that party must demonstrate on appeal that the evidence establishes as a matter of law, all vital facts in support of the issue, and the party may prevail on appeal only if no evidence supports the trial court's adverse finding and the contrary position is conclusively established. *See Francis*, 46 S.W.3d at 241. A matter is conclusively established only if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller*, 168 S.W.3d at 816.

<u>Fraud</u>

Appellants assert that they conclusively established each element of a fraud claim based on violations of Michigan franchise law, suing Kitts without providing the notice required by the contract and then concealing it from Appellants, and having Kitts sign a release of all claims against Appellees. Appellants do not present argument, supporting authority, or record citations to sway us that the record conclusively established fraud. Instead, they refer us to a previous section of their brief where they asserted that they established their affirmative defense of fraud by nondisclosure.

As explained above, Appellants did not properly request the trial court apply Michigan law. *See* TEX. R. EVID. 202. Further, the Franchise Agreement does not include a provision banning releases or incorporating Michigan law.

As explained above, the Franchise Agreement's requirement to provide notice before filing suit was inapplicable due to the application of the exception in Section 13.7. Thus, Appellants did not prove Appellees had a duty to provide notice to Appellants before filing the suit. *See Bombadier Aerospace Corp.*, 572 S.W.3d at 219.

Kitts voluntarily signed the amendment containing the release. Merely including a release paragraph in a contract does not constitute fraud. Appellants have not proven the harm element of fraud by nondisclosure. *See*

*id.*  Accordingly, Appellants have not demonstrated that the evidence establishes as a matter of law all vital facts in support of their fraud claim.  *See Francis*, 46 S.W.3d at 241.

<u>Breach of Contract</u>

Appellants contend the evidence established each element of their breach of contract claim against Rainbow.  In their abbreviated argument, they assert they established violations of Michigan law, failure to provide notice and comply with the dispute resolution procedure, and termination of the Franchise Agreement without notice, opportunity to cure, or good cause, which, they contend, all constitute breach of the Franchise Agreement.

To prevail on its breach of contract claim, a party must establish (1) a valid contract; (2) performance or tendered performance under the contract; (3) a breach by the other party; and (4) damages resulting from the breach.  *See Woodhaven Partners, Ltd.*, 422 S.W.3d at 837.

As explained above, in addition to the fact that application of Michigan law was not properly presented to the trial court, the complained-of provision of the Michigan statute is not incorporated into the Franchise Agreement.  Any violation of that provision would not constitute a breach of contract.  Under the facts of this case, Appellees were not required to provide notice and comply with the dispute resolution procedure before filing suit.  Instead, they complied

with the provision for emergency relief set out in Section 13.7 of the Franchise Agreement. Further, Appellees were not required to provide notice before terminating the Franchise Agreement if the franchisee materially impaired Rainbow's goodwill or failed to comply with reporting requirements or audited financial statements. Appellees complied with the required notice provisions for failure to pay monies owed to the franchisor. Therefore, Appellants have not established their claims for breach of contract against Rainbow as a matter of law. *See Francis*, 46 S.W.3d at 241; *Woodhaven Partners Ltd.*, 422 S.W.3d at 837.

Appellants contend that Grounds Guys breached its contract by simply cutting off Appellants. They contend Grounds Guys never sent a default notice or terminated the agreement. Appellants assert that they continued to do business, send payments, and seek help yet Grounds Guys denied their access to software and provided little support.

The trial court rendered a take nothing judgment on Appellants' breach of contract claim against Grounds Guys and simultaneously found that Appellants abandoned their Grounds Guys franchise. To constitute abandonment, there must be both an intention to abandon and an actual relinquishment of the contractual enterprise or obligation. *Jacobs v. Robinson*, 241 S.W. 241, 243 (Tex. App.—Dallas 1922), *aff'd* 254 S.W. 309 (Tex. 1923).

Intent may be inferred from the conduct of the parties. *See Maples v. Henderson Cty.*, 259 S.W.2d 264, 267 (Tex. App.—Dallas 1953, writ ref' d n.r.e.).

The Franchise Agreement between Appellants and Grounds Guys provides that:

> Franchisee shall be deemed to be in default of this Agreement, and Franchisor may terminate the Agreement, without affording Franchisee an opportunity to cure the default, . . . if:
> . . . .
> Franchisee abandons the Franchised Business or forfeits the right to transact business or otherwise ceases to operate the Franchised Business for seven (7) consecutive days (excluding normal vacations and holidays) when, in Franchisor's opinion, the ability of Franchisee to resume an effective operation has been substantially impaired or operations are otherwise not likely to resume . . . .

Josh Sevick, corporate representative for Grounds Guys, testified that they considered Kitts to have abandoned the franchise because he no longer engaged with them, was not paying them for anything his contract required him to pay, and he was not reporting. The record shows that Grounds Guys sent over a hundred emails to Kitts regarding his franchise, attempting to resolve problems.

While Kitts testified that he did not have access to Grounds Guys' software system, the trial court may have determined that Grounds Guys was

not at fault for that issue. *See City of Keller*, 168 S.W.3d at 822. Kitts testified that he ran out of money and had to stop operating. Coupled with Appellants' failure to comply with the terms of the Franchise Agreement, the trial court could interpret Kitts's statement to mean that Kitts abandoned the Grounds Guys franchise. *See id.*; *Maples*, 259 S.W.2d at 267.

Accordingly, the evidence shows that Appellants did not perform their contractual obligations, an element necessary to prove entitlement to judgment on their breach of contract claim. *Woodhaven Partners Ltd.*, 422 S.W.3d at 837. Appellants did not demonstrate as a matter of law all vital facts in support of their counterclaim that Grounds Guys breached the Franchise Agreement. *See Francis*, 46 S.W.3d at 241.

Deceptive Trade Practices Act

Appellants contend that the evidence established entitlement to judgment on their claim for violations of the Texas Deceptive Trade Practices Act (DTPA). They assert that Appellees made various misrepresentations and engaged in fraud, including by non-disclosure of the lawsuit, fraudulent release, violations of Michigan law, and termination without notice and an opportunity to cure in violation of the DTPA. *See* TEX. BUS. & COM. CODE ANN. §§ 17.41-17.63.

As explained above, there is no merit to any of these contentions, and therefore, no violation of the DTPA. Appellants did not demonstrate that the evidence establishes as a matter of law all vital facts in support of their DTPA claim. *See Francis*, 46 S.W.3d at 241.

Conclusion

Appellants have not shown entitlement to judgment on any of their counterclaims. Accordingly, we overrule their fourth issue.

## CONCLUSION

The trial court did not err in failing to apply Michigan law, the evidence is sufficient to show Appellants breached the Franchise Agreement, and the evidence is insufficient to support Appellants' affirmative defenses or their counterclaims. Accordingly, we affirm the trial court's judgment.

_____

STEVE SMITH
Justice

OPINION DELIVERED and FILED: July 9, 2026

Before Chief Justice Johnson,
    Justice Smith, and
    Justice Harris
Affirmed
CV06

